2005 VT 62

## In re J.M., Juvenile

[878 A.2d 293]

No. 04-555

¶ 1. June 9, 2005. J.M., now seventeen years old, appeals from an order of the Franklin Family Court modifying J.M.'s case plan and disposition. The new plan requires J.M. to complete rehabilitation treatment at the Woodside Residential Program, commonly called the Woodside "R-wing." J.M. argues that the family court did not make the findings required by statute to modify disposition. J.M. also argues that the court erred because the new plan does not put J.M. in the least restrictive and most family-like setting possible as federal and state policy require. We affirm.

¶ 2. In October and November 2002, the State charged J.M. with delinquency in two separate cases. The State subsequently dropped the delinquency charges and replaced them with two petitions alleging that he was in need of care and supervision (CHINS). In March 2003, the Franklin Family Court adjudicated J.M. CHINS because his behavior was beyond his parents' control. 33 V.S.A. § 5502(a)(12)(C). The family court transferred legal custody and guardianship of J.M. to the Commissioner of the Department for Children and Families (DCF), and it approved a case plan whose goal was to reunify J.M. with his father and stepmother after J.M. received needed treatment.

¶ 3. J.M.'s behavioral problems are serious. He suffers from attention deficit hyperactivity disorder and oppositional defiant disorder, and has shown symptoms of post-traumatic stress disorder. J.M. can be violent and aggressive towards other people. On one occasion, J.M. assaulted his older sister. That incident led to a separate delinquency charge in Lamoille County. In May 2003, the Lamoille Family Court adjudicated J.M. to be delinquent and ordered him to remain in DCF custody while on probation. The delinquency case was transferred to the Franklin Family Court in early 2004 by agreement of all the parties. Since that time, DCF has prepared a unified case plan for J.M. in the CHINS and delinquency dockets, although the

Franklin Family Court never ordered the cases consolidated.*

---

* The lack of an order consolidating the CHINS and delinquency dockets led to some confusion about this appeal. The family court docket numbers cited on virtually all of the documents in the record before us, including J.M.'s notice of appeal, reflect the docket numbers assigned to J.M.'s CHINS cases, but not the delinquency case. The docket number assigned to the delinquency case appears on the case plan giving rise to J.M.'s appeal, but it does not appear on J.M.'s notice of appeal or the court's order granting DCF's motion to modify. Consequently, we ordered supplemental briefing on whether the family court had authority to place J.M. at Woodside considering that the record suggested that he was in custody on a CHINS finding only. See 33 V.S.A. § 5801(a) (limiting Woodside to the treatment of children adjudicated delinquent). The additional briefing made clear that, although the Franklin Family Court never ordered the CHINS and delinquency proceedings consolidated, DCF and the parties have treated the proceedings as if they had been consolidated. That treatment makes sense because there is only one child; it would be illogical, and wasteful of scarce resources, for DCF to prepare, and for the court to approve, multiple case plans with competing goals and treatment options simply because the child is the subject of more than one Title 33 proceeding. We observe that the record would have been much less confusing, and the additional briefing would have been unnecessary, had the family court ordered the cases consolidated. In any event, the record is now clear that pursuant to the Lamoille Family Court's order of May 22, 2003, J.M. is in DCF custody as a delinquent child in addition to his

¶ 4. To address J.M.'s issues, DCF recommended that the child receive a number of services, including therapy and medication. The agency placed J.M. in a number of different foster homes and programs to treat his problems, all without success. As a result, J.M. has bounced from one placement to another since entering DCF custody in 2003. When a suitable placement was either not ready to accept him or was not available, DCF placed J.M. in the detention wing at Woodside. The detention wing offers no counseling or other rehabilitation treatment. Woodside's R-wing is, however, dedicated to rehabilitating children adjudicated delinquent by the family court. Ultimately, DCF determined that J.M. would benefit from the services and structure offered by Woodside's R-wing residential program. Accordingly, in July 2004, the State moved to modify disposition to require J.M. to complete Woodside's residential program before reunifying with his father and stepmother.

¶ 5. J.M. and his family opposed DCF's plan. They wanted DCF to allow J.M. to live in the community with his aunt and uncle, an arrangement that had failed in the past. The family proposed a plan to ensure that J.M. would not be left alone and that he would receive the individual counseling and substance abuse treatment he needs. After taking evidence from the parties, the court granted DCF's motion to modify. The court was "impressed with the family's commitment and willingness to undertake this plan and commitment to [J.M.]." The court believed that J.M. "does need an intensive program to deal with anger management issues, substance abuse issues and oppositional tendencies." The court

---

CHINS status. Placement at Woodside is not, therefore, prohibited by statute.

further explained that J.M. faces much future misery and potential criminal sanctions if he is unable to "quickly master anger management and substance abuse avoidance tools" given his age — J.M. will turn eighteen in April 2006. The court concluded that J.M.'s best chance for a stable and happy life in the future rested with residential treatment at Woodside. J.M. appealed the decision to this Court.

¶ 6. J.M. first argues that the court's decision lacks findings that a substantial and material change of circumstances occurred and that it is in his best interests to be confined at Woodside. He argues that the change at issue here is simply a change of placement, which alone does not amount to the change of circumstances the statute contemplates. See 33 V.S.A. § 5532(a) (allowing the family court to modify disposition upon a finding that changed circumstances so require in the best interests of the child). DCF counters that its decision to place J.M. at Woodside did not require prior family court approval because DCF is J.M.'s lawful custodian and as such, it has plenary authority over where J.M. resides.

¶ 7. Determining the extent of DCF's authority to place J.M. at Woodside without court approval is unnecessary here. The fact is that DCF sought court approval of the modified case plan and it delayed placing J.M. in the R-wing pending the court's approval. The question for us, then, is whether the record supports the court's findings of changed circumstances. We conclude that it does. J.M. has been in and out of a variety of foster homes and residential programs since entering DCF custody. J.M.'s psychological issues were treated only intermittently because he could not achieve stability in any of his prior placements. In sum, DCF's plan was not working for J.M., and something had to be done to ensure that he receives the services he needs. J.M.'s lack of progress in meeting the case plan's goals supports the court's findings that the statutorily required change of circumstances had occurred since the original disposition order.

¶ 8. J.M. next argues that the court failed to analyze his best interests according to the statutory factors set forth in 33 V.S.A. § 5540(1)-(4): (1) the child's relationship with his parents and family members; (2) the child's adjustment to his community, home, and school; (3) the likelihood that the child's parents can, within a reasonable period of time, resume parenting; and (4) whether the child's parents play a constructive and loving role in the child's life. Although the court in this case did not cite each factor explicitly, its decision reflects that it considered those factors in light of the evidence admitted during the modification hearing. The court's order notes the family's commitment to J.M.'s rehabilitation; J.M.'s inability to adjust to prior placements; J.M.'s need for further treatment before his release from DCF custody; and the ability of the Woodside program to meet J.M.'s important and pressing needs. The court concluded that "the best opportunity for [J.M.] to lead a life that he will control and enjoy in the future is to complete the residential program at Woodside." The family court's findings support its conclusion that J.M.'s best interests will be met by undergoing rehabilitation at Woodside's residential program.

¶ 9. J.M. claims that his needs could be met by living in his aunt and uncle's home with the support and assistance of other family members. He argues that state and federal policies require that children in state custody be placed in the most family-like and least restrictive setting as possible. We do not disagree with J.M.'s characterization of state and federal juvenile justice policies. See 33 V.S.A. § 5501(a)(3) (providing that Title 33 proceedings are intended to separate

a child from his or her parents only when necessary and, whenever possible, to keep the child in a family environment during separation); 42 U.S.C. § 675(5)(A) (2000) (requiring states accepting federal foster care funding to establish a case plan for a child that is designed to achieve placement in the least restrictive and most family-like setting possible). We disagree, however, that the family court committed reversible error in rejecting the family's plan in favor of DCF's. The disposition most suited to meet the child's needs is a discretionary decision the family court must make after considering the options the parties present. Here, the court explained that J.M. had already tried living with his aunt and uncle. J.M. was forced to leave their home because of his oppositional and aggressive behavior. J.M.'s social worker told the court that no other less restrictive program exists that could meet J.M.'s particular needs. The court found that, to resolve his anger management and substance abuse issues, J.M. requires an intensive program in a more structured environment than his relatives can offer. The family court's decision granting DCF's request to place J.M. in Woodside's rehabilitation program was within its discretion and is supported by the record.

*Affirmed.*