NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 109

No. 2015-316

| | |
|---|---|
| Heidi Corcoran Wener | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Family Division |
| | |
| Erik Wener | February Term, 2016 |

Nancy Corsones, J.

Pamela Gatos of Kenny & Gatos, LLP, Rutland, for Plaintiff-Appellee.

David G. Carpenter of Kenlan, Schwiebert, Facey & Goss, P.C., Rutland, for
  Defendant-Appellant.

PRESENT:  Dooley, Skoglund, Robinson and Eaton, JJ., and Tomasi, Supr. J.,
          Specially Assigned

¶ 1.  **DOOLEY, J.**  Mother appeals from a superior court decision finding that her proposed relocation and parents' breakdown in communication were changed circumstances warranting modification of parental rights and responsibilities and transferring sole legal and physical responsibilities to father.  She argues that the court erred in finding a real, substantial, and unanticipated change in circumstances, and that the decision to modify the extant custody agreement was not in the best interests of the child as required by 15 V.S.A. § 665.  We affirm the court's finding of changed circumstances with respect to the court's award of legal rights and responsibilities to father based on the breakdown in parental cooperation, but reverse and remand

the modification in the order with respect to physical rights and responsibilities and parent-child contact.

¶ 2.     The parties are parents of an autistic son born on January 19, 2000. They divorced in August 2008, and stipulated to the following regarding parental rights and responsibilities:

> (a). Legal and Physical Parental Rights and Responsibilities and Parent-Child Contact:
>
> . . . The parties shall share parental rights and responsibilities for [child] with parent child contact established at [mother] having [child] 57% of the time and [father] having [child] 43% of the time as mutually agreed upon. Vacations and Holidays shall be shared as mutually agreed upon.  In the event the parties cannot agree upon a major issue affecting legal responsibility (educational, religious, medical, travel) for [child], and only after good faith mediation has been unsuccessfully pursued, and absent court order, [mother] shall have the final say in the matter.

Following a discussion between the parties in August 2013, the schedule was altered, such that child spent 64% of his time with mother and 36% with father, and this schedule remained in place until the family court's decision.  The child has lived in West Rutland since he was two years old, and has attended West Rutland schools from kindergarten onward.

¶ 3.     The family court found that both parents "consistently participated" in all aspects of the child's education and, in the initial years following their divorce, were able to "communicate and cooperate in making joint decisions regarding [child's] education and medical care."  For example, although mother moved from West Rutland to Proctor, the parties agreed to keep child in the West Rutland school and continued to share their time with him, with "no transportation issues between the two homes."  However, the court found that in recent years the parties' ability to cooperate "evaporated," and that the increasing level of disagreement over matters ranging from which dentist child would see or whether he would ride the bus to school or participate in the free lunch and milk program has "directly impacted" the child's wellbeing.

2

¶ 4.     On February 18, 2015, mother informed father by certified mail that she planned to move to South Burlington and enroll child in South Burlington High School for the 2015-16 academic year. On March 31, father filed a motion to modify parental rights and responsibilities on the basis of changed circumstances; he requested emergency relief, and proposed a schedule that reallocated child's time to 14% with mother and 86% with father during the school year. Father requested sole legal and physical parental rights, subject to contact with mother on the first, second, fourth, and fifth weekends of each month, with the parties alternating and sharing holidays. Mother in turn proposed that she be awarded sole legal and physical rights and responsibilities but agreed to consult with father before making major decisions and to permit father to have contact with child three weekends a month as well as during summer and school vacations. Mother's schedule also contained an alternate plan: should the court decide it was in child's best interests to remain in the West Rutland school system, mother would maintain her Proctor residence to permit the existing parent-child contact arrangement, which the court could memorialize in an order, to continue without interruption. The family court denied father's request for emergency relief on April 1 and scheduled a hearing for June 17. The parties participated in two mediation sessions before the hearing without success.

¶ 5.     Following two days of evidentiary hearings, the trial court issued its decision in July 2015. The court found that father had met his burden in demonstrating by a preponderance of credible evidence that there had been a real, substantial, and unanticipated change in circumstances since the date of the prior order justifying a modification of parental rights and parent-child contact. The court noted there were at least two potential bases for the change: the "breakdown in the parents' ability to communicate, cooperate and make joint decisions" and mother's relocation to South Burlington and decision to change the child's school. The court also applied the factors itemized in 15 V.S.A. § 665, outlining the best interests of the child, and found that the circumstances favored father. In particular, the court agreed with father that an autistic

3

child's developmental needs were promoted by "consistency, continuity, and stability" and that the child has "flourished" in West Rutland schools and enjoys "strong bonds" with classmates, school personnel, and the extended family that live in the community. Accordingly, the court awarded sole "legal and physical parental rights" and responsibilities to father, adopting father's proposed schedule for mother's parent-child contact and vesting him with the right to act as child's "designated decision maker." This timely appeal followed.

¶ 6. On appeal, mother raises two primary arguments. First, she contends that under either of its rationales, the family court erred in finding a real, substantial, and unanticipated change in circumstances. Second, she avers that the decision to modify the 2008 order—and the de facto 2013 arrangement—was not in the child's best interests as required by § 665. While we agree with the family court that the breakdown in parental cooperation was a sufficient change in circumstances to allow a reexamination of the 2008 order with respect to legal rights and responsibilities, we also conclude that the court failed to separately consider whether grounds existed to modify the physical rights and responsibilities in light of mother's alternate physical responsibility and parent-child contact plan. Accordingly, we reverse and remand the part of the trial court order relating to physical rights and responsibilities and parent-child contact.

¶ 7. In addressing mother's argument with respect to changed circumstances, it is instructive to review the statutory law on parental rights and responsibilities and how the parties' agreement on which the divorce order is based fits with that law. The sections of the statutes on parental rights and responsibilities in divorce and annulment actions begin with a series of definitions. "Parental rights and responsibilities" is defined to mean "rights and responsibilities related to a child's physical living arrangements, parent-child contact, education, medical and dental care, religion, travel and any other matter involving a child's welfare and upbringing." 15 V.S.A. § 664(1). "Legal responsibility" is defined to mean "the rights and responsibilities to determine and control various matters affecting a child's welfare and upbringing, other than

4

routine daily care and control of the child, [including] . . . education. Legal responsibility may be held solely or may be divided or shared." Id. § 664(1)(A). "Physical responsibility" means "the rights and responsibilities to provide routine daily care and control of the child subject to the right of the other parent to have contact with the child. Physical responsibility may be held solely or may be divided or shared." Id. § 664(1)(B). In turn, "parent child contact" means "the right of a parent who does not have physical responsibility to have visitation with the child." Id. § 664(2).

¶ 8. The statutes go on to authorize parents to agree "to divide or share parental rights and responsibilities." Id. § 665(a). The effect and content of such an agreement is provided by 15 V.S.A. § 666. An agreement between parents that divides or shares parental rights and responsibilities "shall be presumed to be in the best interests of the child." Id. § 666(a). To be "a complete agreement," the pact must include provisions that address (1) physical living arrangements; (2) parent-child contact; (3) education of the minor child; (4) medical, dental and health care; (5) travel arrangements; (6) procedures for communicating about the child's welfare; and (7) if parental rights and responsibilities are to be shared or divided, procedures for resolving disputes, which may include mediation and binding arbitration. Id. § 666(b).

¶ 9. The agreement in this case, according to its words, shared parental rights and responsibilities. With respect to physical responsibilities, it shared those responsibilities, with 57% of the time going to mother and 43% of the time going to father, with no specification of how this division of time was to be allocated over the days of the week, month or year. That allocation was left to be worked out by the parties, which they did, including an agreement by father to lower his hours with the child to 36% of the time to give mother weekend time with the child.

¶ 10. With respect to legal responsibilities, mother argues in her brief to this Court that the agreement also granted "full legal custody" to her in the form of a veto power, or, at the very least, "enhanced legal authority." We do not read the agreement in that manner. Instead, we believe its language indicates an intention to share legal responsibility, although the language is

5

less specific for this part of parental rights and responsibilities.  The sharing relationship was defined in terms of what would happen if the parents could not agree on a matter of legal responsibility related to education, religion, medical care or travel.  They were required to "first attempt to resolve such dispute between themselves."  If that did not work, they were required to "engage in two independent good faith mediation sessions prior to returning to [the family court] for a hearing."[1]  Absent a court order, mother was to "have the final say in [the] matter."  Although the parties' agreement touched on the subjects required for a complete agreement, it did not specifically regulate most of them.  See id. § 666(b).

¶ 11.    With this background in mind, we look at the law applicable to the motions to modify filed by the parties.  Much of the difference in the positions of the parties in this case and the analysis of the trial court relate to the interaction of the statutory provisions and the agreement, with the grounds for modification of a court order based on a parental agreement governing parental rights and responsibilities.  15 V.S.A. § 668 provides that such an order may be modified "upon a showing of real, substantial and unanticipated change of circumstances," whether or not the order is based upon a stipulation or agreement.  Although the standard for modification is the same under the statute, whether the issues deal with legal or physical responsibilities, our case law has viewed these situations somewhat differently.  In cases involving changed circumstances that impacted physical responsibilities, we have stated that in order to ensure stability in the lives of

---

[1]  In Gazo v. Gazo, 166 Vt. 434, 442-44, 697 A.2d 342, 346-47 (1997), a case in which legal rights and responsibilities with respect to the children were awarded to the mother, the court order added an obligation to consult with the father with respect to "major decisions."  In response to the mother's facial challenge that the consultation provision was not authorized, we held that some sharing of responsibility short of joint custody was authorized by the statute and ruled that the family court had the power to require consultation.  We further ruled, however, that the language was too vague to be enforceable and remanded for the court to specify the decisions involved and to set an ascertainable standard to determine whether a decision is so important as to require consultation.  Id. at 445-46, 697 A.2d at 348.  The language in the order before us is similar, although it arises by agreement and in the context of shared legal rights and responsibilities.  In any event, mother has not challenged the validity of the provision in this case, and the decision that underlies the changed circumstances here was "major" under any standard.

children, a party seeking a modification in the allocation of physical responsibilities has a heavy burden to show changed circumstances. See deBeaumont v. Goodrich, 162 Vt. 91, 97, 644 A.2d 843, 847 (1994); Pill v. Pill, 154 Vt. 455, 460, 578 A.2d 642, 645 (1990) (finding change of physical custody involves violent dislocation and requires higher burden to justify).

¶ 12.    On the other hand, we have defined a lesser burden for modification of legal responsibilities, including in circumstances where legal rights and responsibilities are shared. The leading decision in this regard is Kilduff v. Willey, 150 Vt. 552, 534 A.2d 677 (1988). That case involved a divorce order based on a stipulation for joint custody, but joint decision-making broke down over visitation rights, leading to cross-motions for modification for greater rights in each party without the joint decision-making. We held that there were not changed circumstances to change the allocation of physical responsibilities, but our view of the need to modify the joint decision-making was different:

> What the findings do appear to demonstrate, however, is that substantial changes have occurred with respect to the joint custody arrangement. That arrangement, which requires cooperative efforts of both parents in deciding the major questions for [the child's] life, appears to have broken down. If this is so, it is proper for the court to proceed to the question on the merits of what decision-making arrangement is in the best interests of this child. On this question the stakes are not so high: a modification of the decision-making arrangement does not entail the violent dislocation realized by a change in physical custody. The critical value of continuity is less threatened. Accordingly, the burden may be easier for the moving party to carry. While a substantial and unanticipated change must still be shown, the breakdown in communication between the parents may suffice to reach the threshold. On remand, the court must make specific findings on this issue, asking first whether the threshold requirement for a modification of the decision-making arrangement has been established, and, if so, what arrangement will best serve [the child's] interest.

Id. at 555, 554 A.2d at 679-80. We summarized that: "the threshold findings with respect to the issues of physical custody and the decision-making arrangement are distinct. The record must independently support each threshold finding; crossing the threshold to the best interest test on one

7

issue does not ipso facto warrant proceeding to the best interest test on the other." Id. at 556, 554 A.2d at 680.

¶ 13. The dissent argues that Kilduff does not apply because one parent had sole physical rights and responsibilities, with the other parent having only parent-child contact, in that case where in this case the parties had joint, but unequal, physical rights and responsibilities, with no additional provision for parent-child contact needed. This is largely a distinction without a difference, and nothing in Kilduff suggests that its holding is limited to sole custody situations.

¶ 14. In assessing whether father's motion for modification in this case was based sufficiently on changed circumstances, the first major question the trial court confronted was whether this case primarily involved relocation of mother and its effect on physical responsibilities of the parties, or alternatively, primarily involved legal rights and responsibilities—namely, decision-making concerning the child's education. To put this question in context, the vast majority of parental-responsibility cases that have reached this Court since Kilduff have involved relocation of the child to accompany the parent who has primary physical responsibilities such that the ability of the other parent to have parent-child contact is impaired. See Hawkes v. Spence, 2005 VT 57, 178 Vt. 161, 878 A.2d 293; Lane v. Schenk, 158 Vt. 489, 614 A.2d 786 (1992). We have observed that "when childrearing and its concomitant decision-making are shared, relocation to a remote location by one parent requires at the very least a reassessment of the custodial arrangement and, because of the practicalities involved in shared parenting, will often necessitate a change in custody." Hoover v. Hoover, 171 Vt. 256, 259, 764 A.2d 1192, 1194 (2000). Both parties in this case relied upon the relocation cases, at least in part, to make their arguments.

¶ 15. The trial court considered whether to apply this Court's jurisprudence concerning instances of parental relocation. It concluded that those cases were inapplicable to these circumstances. Given mother's position that, if father were awarded legal rights and responsibilities, she would retain her West Rutland home and maintain her presence there for all

of the parent-child contact called for in the existing order, we agree that the principal dispute in this case does not involve relocation. Instead, the primary issue to be resolved here is whether changed circumstances exist regarding educational and other important decision-making, and, if so, whether the best interests of the child favor awarding sole legal rights and responsibilities to father or mother. Further, unlike in the relocation cases, it is not necessary to address the allocation of physical rights and responsibilities provision of the divorce order to respond to the grounds for changed circumstances. The physical rights and responsibilities order sets only the percentage of time each parent is entitled to have with the child, rather than an hour by hour schedule. The latter is to be worked out by the parties, and there is no finding that the parties have been unable to do that. Nor is there any finding that it could not be worked out if the child moved to South Burlington and attended school in that location. This dispute is about the education of the parents' child, an aspect of legal responsibilities. While we accept that changing the school for an autistic child can be difficult if not traumatic, we cannot equate it with the "violent dislocation" that occurs when a child moves far from one parent to the point where parent-child contact is impaired.

¶ 16. This brings us to the trial court's decision that changed circumstances existed to grant father's motion to modify the parental responsibility provisions of the divorce order. The trial court relied on relatively small matters—dental care for the child, taking the bus to school during days the child was with father, and payment for school breakfast—to find that mother was acting without attempting to reach a joint decision with father. This came to a head when mother announced by letter to father in February 2015 that she was moving to South Burlington to enroll the child in the South Burlington school system in the fall of 2015. There had been no consultation on this decision prior to the announcement, and mother refused to engage in mediation as required by the divorce order until ordered to do so by the court. Based on mother's testimony, the court concluded that mother did not participate in mediation in good faith as also required by the divorce order. Mother also moved with the child during the trial court hearings. On these facts, the court

9

found changed circumstances and modified the divorce order to award both legal and physical responsibilities to father with parent-child contact on weekends to mother.

¶ 17. We first examine whether there were grounds to modify legal rights and responsibilities. We will uphold a family court's decision as to whether there has been a real, substantial, and unanticipated change in circumstances "unless the discretion of the lower court was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." Hayes v. Hayes, 144 Vt. 332, 336, 476 A.2d 135, 138 (1984) (quotation omitted). Similarly, findings are viewed in the light "most favorable to the prevailing party" and the decision will be upheld unless the court exercised its discretion upon "unfounded considerations." Paine v. Buffa, 2014 VT 10, ¶ 10, 195 Vt. 596, 93 A.3d 90 (quotation omitted). While there are no fixed standards to determine what is a change of circumstances, the welfare and best interest of the child are the primary considerations in determining whether circumstances have changed. Wells v. Wells, 150 Vt. 1, 4, 549 A.2d 1039, 1041-42 (1988).

¶ 18. Under this standard of review and the standard of substantial change set out in Kilduff, see infra, ¶ 12, we agree that the trial court did not err in finding a substantial change of circumstances with respect to legal responsibilities. The decision of where the child would go to school was among the most important of the legal rights and responsibilities the parties had because the decision was central to the welfare and best interest of the child. Joint decision-making had wholly broken down with respect to that decision, and the court found that mother violated the protocol established by the parties in their agreement. See, e.g., Maurer v. Maurer, 2005 VT 26, ¶ 8, 178 Vt. 489, 872 A.2d 326 (mem.) (finding changed circumstances based on "new development" that parents could not agree on transportation, counseling, and parenting styles); Meyer v. Meyer, 173 Vt. 195, 198, 789 A.2d 921, 923 (2001) (concluding change in circumstances present where there had been "extensive cooperation" between parents in years following divorce before "significant change for the worse" in time immediately preceding modification suit). We

10

agree that there was a change of circumstances with respect to that decision, and the court acted appropriately in modifying the divorce order to assign legal rights and responsibilities to one parent.

¶ 19.    We take this opportunity to address an approach that has been part of several trial court custody decisions reviewed by this Court.  The trial court's decision is replete with suggestions that the court involved itself in the question of what school was better for the child. We remind trial judges that the duty of the court is to determine which parent should be making educational decisions, not which educational decision is best, even if the parties call upon the court to do so.  See Hawkes, 2005 VT 57, ¶ 11 (observing that court "may not substitute its judgment for that of the custodial parent merely because the court would have done something different if it had been the parent" (quotation omitted)).  While we affirm the trial court's decision as to the allocation of parental rights and responsibilities, we stress that the proper role of the court in this case was to determine whether the decision-making process contained in the divorce order was properly implemented and not whether the right school for the child is in West Rutland rather than in South Burlington.  If we had concluded that the sole basis for the court's decision was to ensure that the child stayed in the West Rutland school district, we could not affirm the decision.

¶ 20.    Mother's final argument is that the court erred in determining that it was in the best interest of the child to modify the parental rights and responsibilities order as the court did.  As we did above, we consider first the best-interest analysis with respect to legal rights and responsibilities.  In making its decision, the court went through each of the best-interest factors specified in 15 V.S.A. § 665 and found that most of them favored father.  As with the decision on whether there were changed circumstances, the court's best-interest determination lies within its broad discretion.  See LeBlanc v. LeBlanc, 2014 VT 65, ¶ 21, 197 Vt. 17, 100 A.3d 345.  While mother disagrees with the weight to be assigned to the various factors and the court's determination of which favored a particular parent, we cannot conclude that there was an abuse of discretion.

Therefore, we must affirm the court's best-interest determination and the resulting modification with respect to legal responsibilities.

¶ 21. We now turn to the same two questions with respect to physical rights and responsibilities. The trial court did not separate its analysis between legal rights and responsibilities and physical rights and responsibilities. It apparently believed that the same facts and circumstances that warrant modification of the order with respect to legal rights and responsibilities necessarily justify modifying the order's shared physical rights and responsibility and parent-child contact provisions and that the burden of establishing changed circumstances is the same. We do not agree. We have previously held that § 665(a), which governs where parents cannot agree, "does not mean that the court must award <u>all</u> rights and responsibilities to one parent," as "[t]he statute's purpose is to avoid the disruption to children caused by forcing unwilling parents to participate in joint decision-making." <u>Chase v. Bowen</u>, 2008 VT 12, ¶ 39, 183 Vt. 187, 945 A.2d 901 (emphasis added). We conclude that modification of physical rights and responsibilities was inappropriate without separate findings and analysis as specified in the following paragraphs.

¶ 22. Although the burden for modification of the allocation of physical rights and responsibilities is greater than that for modification of legal rights and responsibilities, the decision of the trial court barely mentions the grounds for modification of the physical rights and responsibilities aspect of the order. This is a significant deficiency because most of the incidents the court relied upon go to decisions relating to legal rights and responsibilities, most importantly where the child would go to school. The decision does not reflect that the order's provisions on physical rights and responsibilities were general and not specific and left to the parties the responsibility to work out how to implement them and did not specify where the parties must live. Nor does it reflect that the parties were able to agree on the specifics of parent-child contact from

the beginning of the governing order, including how to allocate contact time during vacations, and agreed without acrimony that mother would have more time with the child than the order allowed.

¶ 23.    We recognize that mother's move to South Burlington, some sixty miles away, would necessarily cause a different allocation of the parties' child contact time but that does not necessarily mean that the 64%-36% allocation as modified by the parties' agreement could not be implemented in the changed environment.  There is no discussion in the trial court decision of whether the order would be violated as a result of the move.  The discussion was only about how the preexisting implementation of the order would have to change, a decision left to the parties.

¶ 24.    We again emphasize the high burden on modification of a physical rights and responsibilities order, higher than the burden for modification of a legal rights and responsibilities order.   See Hawkes, 2005 VT 57, ¶ 20 (recognizing "heavy burden of showing changed circumstances" for parties seeking change of physical custody); Gates v. Gates, 168 Vt. 64, 68, 716 A.2d 794, 797 (1998) (noting threshold requirement of finding change occurred for modifications of decision-making arrangements is "not as high" as that required to alter physical custody); Kilduff, 150 Vt. at 555-56, 554 A.2d at 679-80 ("What the findings do appear to demonstrate, however, is that substantial changes have occurred with respect to the joint custody arrangement.  That arrangement, which requires cooperative efforts of both parents in deciding the major questions for [their child's] life, appears to have broken down. . . .  In contrast, the findings required to demonstrate a change of circumstances sufficient to modify the physical custody of the child are much less apparent in this case.").  Excepting the move to South Burlington, the incidents on which the trial court relied showed that mother exhibited some unpleasant and unwarranted behavioral traits in her interaction with father.  They often showed, however, that the parties were able to work out their differences.  Unfortunately, these kind of incidents are too common between couples who are deeply committed to the best interests of their children and have strong views on how those best interests should be achieved.  Modification of parental right orders would become

routine if these types of incidents were sufficient to demonstrate a real, substantial and unanticipated change of circumstances as required by 15 V.S.A. § 668. We cannot conclude that these incidents alone, without considering the enrollment of the child in school in South Burlington, were sufficient to meet the high burden to authorize a modification of physical rights and responsibilities.

¶ 25. We need not rule, however, on whether the weaknesses in the trial court decision would have required us to remand it for a more detailed analysis under the proper standard because that decision is based on the original proposals of the parties which were premised on mother moving to South Burlington and the child attending South Burlington schools. In fact, mother presented an alternative proposal, replacing her original proposal if the court decided to award legal rights and responsibilities solely to father so he could continue to enroll the child in the West Rutland school. Her alternative was that she would move back to her Proctor home so that the parties could continue to operate under the provisions of the divorce order implementing it exactly as they had in the past.

¶ 26. The court did not address the substance of the proposal. Its sole response to the proposal is in a footnote that states: "The proposal doesn't seem to contemplate that once a change in circumstances is established, the court has the authority and the responsibility to 'annul, vary or modify an order . . . if it is in the best interests of the child . . . .' "

¶ 27. The court never analyzed whether there was a real, substantial and unanticipated change of circumstances such as to modify the physical rights and responsibilities order if mother lived in Proctor as before and the child went to West Rutland schools. Moreover, it engaged in an extensive analysis of the best interests of the child using the statutory best interest factors, see 15 V.S.A. § 665, based solely on the circumstances in the original proposals of the parties. Thus, the court decided that factor (3), 15 V.S.A. § 665(b)(3) (ability and disposition of each parent to meet the child's present and future developmental needs), favors father because of "his commitment to

14

providing [the child] with stability in the community [the child] has known since he was two years old, and the school he has known since he was three years old." The court decided that factor (4), id. § 665(b)(4) (quality of child's adjustment to present housing, school and community and potential effect of any change) favors father strongly because "the evidence does show that there is a substantial risk that change will not be good for [the child]. The evidence shows that he does not adjust well to change . . . . It is difficult to imagine a more substantial change for [the child] than that proposed by mother." The court decided that factor (7), id. § 665(b)(7) (the relationship of the child with any other person who may significantly affect the child), heavily favored father because "if [the child] were to move to Burlington, his relationships with his stepmother, his step brother, his grandfather, his classmates . . . and his teachers would all be negatively impacted by the reduced time in West Rutland and by changing schools." None of these conclusions are applicable if mother lives in Proctor and the child is enrolled in the West Rutland schools.

¶ 28. Contrary to the dissent's argument, the court's failure to analyze mother's alternative plan implicates more than parent-child contact alone, and the possibility that mother might obtain greater parent-child contact on remand cannot remedy that error. The trial court here failed to analyze whether there were grounds for a modification of the physical rights and responsibilities order, and whether such a modification was in the best interest of the child, in light of mother's alternative proposal. Given the court's focus on the child's great need for "consistency, continuity, and stability," we believe it especially important that it evaluate mother's proposal with regard both to the issue of physical rights and responsibilities and ongoing parent-child contact.

¶ 29. Therefore, we must reverse the part of the court's order that modified the preexisting provisions on physical rights and responsibilities and parent-child contact and remand for the court to determine, whether in light of the evidence and mother's proposal, there are changed circumstances sufficient to modify the physical rights and responsibilities and parent-

15

child contact portions of the divorce order; and, if so, whether the best interests of the child favor altering those provisions.[2]

Affirmed as to the order of the superior court modifying the divorce order with respect to the allocation of legal rights and responsibilities; reversed and remanded for proceedings consistent with this decision with respect to the order modifying the divorce order allocation of physical rights and responsibilities and parent-child contact.

FOR THE COURT:

_____

Associate Justice

¶ 30.   **SKOGLUND, J., concurring and dissenting.**   In reversing on a ground that no party has raised, the majority misconstrues the record and misstates the law.  The trial court obviously considered and found changed circumstances with respect to both legal and physical rights and responsibilities and it applied the correct standard in doing so.  The court acknowledged the case law, relied upon here by the majority, and largely distinguished it because neither parent here had sole physical custody.  The key questions before the court were which parent should have the right to determine where the child went to school—authority encompassed within legal rights and responsibilities—as well as which parent had authority to provide routine daily care and control of the child—a right that belongs to the primary physical custodian.  Mother proposed, both in her primary and alternate plans, that she have the right to make these decisions.  The court clearly determined, based on an evaluation of the child's best interests, that father should have these rights.  The trial court's findings amply support its conclusions and we should affirm its decision modifying physical and legal rights and responsibilities.  Because the trial court did not

_____

[2] The dissent claims that we are deciding the case on a grounds not raised by appellant.  In fact, mother argued in her brief that there were not grounds for modifying the physical rights and responsibilities order, and particularly that the trial court erred in ignoring her alternative proposal once the court decided the child should stay in the West Rutland school.  Mother's counsel emphasized this position during the oral argument.

consider mother's alternate proposal in fashioning a parent-child contact schedule, I would remand for findings and conclusions on that issue alone. Accordingly, I concur in part and dissent in part.

¶ 31. As we have repeatedly emphasized, the trial court has broad discretion both in assessing whether there has been a change in circumstances and in evaluating what parenting arrangement is in a child's best interests. deBeaumont v. Goodrich, 162 Vt. 91, 98, 644 A.2d 843, 847 (1994); see also Gerety v. Gerety, 131 Vt. 396, 402, 306 A.2d 693, 695 (1973) (recognizing that "[t]here can be no fixed standards to determine what constitutes a substantial change in material circumstances," and courts must be "guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed"). We apply "a highly deferential standard of review to decisions of the family court regarding parental rights and responsibilities." Paine v. Buffa, 2014 VT 10, ¶ 10, 195 Vt. 596, 93 A.3d 90. Given its unique position to assess the credibility of witnesses and weigh the evidence, the court's findings will stand "unless they are clearly erroneous, and we uphold the court's legal conclusions if they are supported by the findings." Id. (quotation omitted). "We view the findings in the light most favorable to the prevailing party, and only reverse if the court exercised its discretion upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Id. (quotation omitted).

¶ 32. The trial court here held two days of hearings and issued a twenty-eight-page opinion, half of which is devoted to findings of fact. The court's numerous findings include the following. When the parties divorced in August 2008, they agreed to share legal rights and responsibilities for their son. At that time, they could communicate and cooperate in making joint decisions regarding the child's education and medical care. Over time, however, they became unable to do so, and the increasing level of hostility and disagreement between parents directly affected their child. The most serious disagreement concerned mother's desire to enroll the child

17

in South Burlington High School for the 2015-2016 school year, with mother claiming that she had the unilateral right to make this decision.

¶ 33. The court found that mother bore much responsibility for the deterioration of the parties' ability to share parental responsibilities. She had a tendency to turn small disputes into large ones, and she made inflammatory and incorrect accusations both to father directly and about father to the child's educators and school administrators. She posted derogatory comments about father on Facebook. Mother threatened father that if he did not agree to one of her proposals for picking up the child that she would call the police and say that father had abandoned child. The court found this last example "disturbing, at least." The court also found that mother's refusal at trial to acknowledge the obvious benefit that the child received from his current school cast doubt on the credibility of the rest of her testimony. Additionally, it noted that mother had not displayed good faith in the mediation process over the schooling issue, and she had to be ordered to attend mediation.

¶ 34. Based on the record, the court determined that mother exhibited a strong tendency to assert unilateral control over issues regarding the child, even issues that arose during father's time with the child. The most significant example of this behavior was the way in which mother went about moving to South Burlington. She simply informed father that she and the child would be relocating, and following the first hearing in this case, she did relocate to South Burlington with the child. Mother emailed father that, despite the ongoing court proceedings, the child's residence was "not up in the air he is moving to Burlington . . . regardless of the court decision." She told father that she would "retain at least the custody that I have unless you are able to prove me unfit to the court and they change [sic] 66% to 33% custody of [the child]." The court found that this email reflected mother's lack of understanding of the nature of the court proceedings. It explained that there was no burden to prove "unfitness" on a motion to modify; rather, the burden was to prove a real, substantial and unanticipated change in circumstances, and if that was proven, then

18

to persuade the court what outcome was in the child's best interests. The court also made note of mother's proposal that "even if the Court should order that [the child] remain in the West Rutland School, the only change that the court would be required to make to the existing [parental rights and responsibilities] schedule would be to provide the relief requested in [mother]'s response to the instant motion in this matter—that is, to memorialize in an Order the actual existing arrangement from 2013, described herein." The court explained that mother's proposal did not appear to contemplate that once a change in circumstances was established, the court had the authority and the responsibility to "annul, vary or modify an order . . . if it is in the best interests of the child, whether or not the order is based on a stipulation or agreement." 15 V.S.A. § 668.

¶ 35.    Based on its findings, the court found at least two grounds to show that there had been a "real, substantial and unanticipated change of circumstances" since the August 2008 final divorce order. Id. First, the parties could no longer communicate, cooperate and make joint decisions regarding their child. Second, mother had relocated to South Burlington and decided to change the child's school. The court detailed the communication breakdown that had occurred, and also explained that mother's move to a new location sixty miles away impacted the daily question of where the child would attend school and which parent would be with him on a daily basis.

¶ 36.    Having reached these conclusions, the court further observed that this case did not appear to fall within the classic type of "relocation" cases addressed by this Court. Because parents were joint custodians, moreover, father did not squarely bear the burden of "justifying the violent dislocation of a change in custody from one parent to the other." Hawkes v. Spence, 2005 VT 57, ¶ 11, 178 Vt. 161, 878 A.2d 273 (cautioning that "when a noncustodial parent seeks a change in custody based solely on the custodial parent's decision to relocate, the moving party faces a high hurdle in justifying the violent dislocation of a change in custody from one parent to the other" (quoting Hoover v. Hoover, 171 Vt. 256, 259, 764 A.2d 1192, 1194 (2000)). Additionally, the

19

court found that mother sought to move for the specific reason of changing the child's school, rather than to better her own life. She wanted the unfettered right to do so despite the parties' shared parenting arrangement. Father was forced to file his motion to modify because mother disregarded the need to mediate this issue and failed to ask the court's permission to change the existing order.

¶ 37. Even if the classic relocation analysis did apply, the court continued, it would find the requisite change in circumstances because mother's relocation clearly impaired father's ability to exercise the responsibilities that he had been exercising under the current plan. Changing that arrangement, the court explained, would substantially diminish the significant parenting responsibility that father has had for the child for the prior seven years. The court reiterated that father did not have the "heavy burden" of overcoming the impact of a "violent dislocation" cautioned against by this Court, and it concluded that any "dislocation" would result from mother removing the child from the only community he had known, and away from father's home where he had lived since he was two years old. Thus, the court determined "that under any possible legal analysis, father met his burden of providing a real, substantial and unanticipated change in circumstances."

¶ 38. In the face of this analysis, the majority somehow concludes that the court failed to adequately address the burden required of a party seeking to change an arrangement of physical rights. Ante, ¶ 21. The majority cites cases that involve, as the trial court recognized, situations where a court was shifting sole physical custody from one parent to the other. See Hawkes, 2005 VT 57, ¶ 5 (pursuant to final divorce order, mother had sole physical rights and responsibilities, and parties shared legal rights and responsibilities); deBeaumont, 162 Vt. at 94, 644 A.2d at 845 (mother appealed modification order that shifted parental rights and responsibilities from her to children's father); Pill v. Pill, 154 Vt. 455, 455, 578 A.2d 642, 643 (1990) (mother appealed modification order that transferred primary physical rights from her to children's father); Kilduff

20

v. Willey, 150 Vt. 552, 552, 534, 554 A.2d 677, 678 (1988) (recognizing that, under existing order, mother had sole physical custody of child, while father had liberal visitation rights). The language concerning a "heavy burden," and a "violent dislocation" presumes that this factor is present, based in part on the fact that "the physical custodian has a right to determine the children's residence," and there are various policy reasons why a parent with sole physical custody should be allowed to relocate. Hawkes, 2005 VT 57, ¶ 9. We made this clear in Hawkes, holding that "when a noncustodial parent seeks a change in custody based solely on the custodial parent's decision to relocate, the moving party faces a high hurdle in justifying the violent dislocation of a change in custody from one parent to the other." Id. ¶ 11 (quoting Hoover, 171 Vt. at, 259, 764 A.2d at 1194).[3] As the trial court observed, this language is inapplicable because neither parent was the sole physical custodian; parents here had joint custody. Yet the trial court even went on to assume arguendo that this language did apply, and concluded that father had met its burden. The majority is wrong in asserting that this issue was not adequately addressed.

¶ 39. Compounding its error, the majority inexplicably fails to discuss the law that applies to modification of shared parenting arrangements. Where, as here, a shared parenting arrangement becomes unfeasible due to the parents' inability to cooperate in decision making or other circumstances, we require "at the very least a reassessment of the custodial arrangement and, because of the practicalities involved in shared parenting," these circumstances "will often necessitate a change in custody." Hoover, 171 Vt. at 259, 764 A.2d at 1194. "This result is further compelled when the parties are no longer able to engage in shared decision-making because of a deterioration in their parenting relationship." Id. We repeated this standard in Hawkes, 2005 VT 57, ¶¶ 11-12 (citing Hoover and drawing clear distinction between cases involving shared parental

_____

[3] It is not clear from Hawkes if this language refers to an assessment of a child's best interests, or an assessment of changed circumstances, although it appears to be the former. In any event, this Court has acknowledged that "the difference between the separate analyses under the modification statute's two distinct steps is 'subtle.' " Hawkes, 2015 VT 57, ¶ 10 (citation omitted).

rights and those where one parent has sole physical custody); see also Maurer v. Maurer, 2005 VT 26, ¶ 8, 178 Vt. 489, 872 A.2d 326 (affirming trial court's finding of real, substantial and unanticipated change of circumstances in context of shared parenting arrangement where parents were unable to agree on transportation or counseling, were setting up activities for child without consulting one another, and had different parenting styles).

¶ 40.   Indeed, Vermont law requires that "[w]hen the parents cannot agree to divide or share parental rights and responsibilities, the court shall award parental rights and responsibilities primarily or solely to one parent."  15 V.S.A. § 665(a) (emphasis added); see also Chase v. Bowen, 2008 VT 12, ¶ 39, 183 Vt. 187, 945 A.2d 901 (explaining that statute's purpose is to avoid disruption to children "caused by forcing unwilling parents to engage in joint decision-making," and recognizing that "by forcing unwilling parents to share parental rights and make joint decisions, a court risks placing a child in the middle of constant and harmful disputes" (quotation omitted)).

¶ 41.   Parents here could not agree where the child would live and go to school.  Both sought sole physical and legal rights and responsibilities so that they could make these decisions. Mother had relocated to South Burlington and wanted the child to live with her there and attend school in that city; father wanted the child to live with him in West Rutland and attend school in that town.  Beyond this fundamental disagreement, the parents could no longer engage in joint decision-making on other topics, to the detriment of their child.  Based on its findings, the court did not err in concluding, by a preponderance of the evidence, that there had been a "real, substantial and unanticipated change of circumstances" since the August 2008 final divorce order. Its decision is consistent with our case law and it reflects the trial court's assessment of the weight of the evidence and the credibility of witnesses.  See Hawkes, 2005 VT 57, ¶ 10 (explaining that "whether a relocation or other change is substantial enough to meet the threshold must be determined in the context of all the surrounding circumstances, keeping in mind that the effect on

the child is what makes a change substantial"); Gates v. Gates, 168 Vt. 64, 69-70, 716 A.2d 794, 798 (1998) ("[W]hile the court is not permitted to decide what is in the best interests of the children during the first phase of the hearing, it may still consider the impact of the change upon the children in deciding whether the circumstances have substantially changed.").[4]

¶ 42.    In Hoover, as here, "mother and father were unable to resolve their conflict and reach an agreeable arrangement that would enable them to continue co-parenting," and thus, "a disruption of the custodial arrangement in this case was inevitable.  The trial court was merely in the position of deciding what was in the best interests of the child[]: sole custody with mother or sole custody with father."  171 Vt. at 259-60, 764 A.2d at 1194.  The court here determined that father should have sole physical and legal rights and responsibilities, and its findings support this conclusion.  Mother disagrees with the result, but challenges only the court's assessment of the weight of the evidence.  Her arguments are easily disposed of on appeal.  See, e.g., Payrits v. Payrits, 171 Vt. 50, 54, 757 A.2d 469, 472-73 (2000) ("We have consistently held that . . . the credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact, and its determination must stand if supported by credible evidence."); Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571, 980 A.2d 799 (explaining that arguments which amount to nothing more than a disagreement with court's reasoning and conclusion do not make out a case for an abuse of discretion).

¶ 43.    The majority, however, only sees the problem as a question of which school the child should attend and decides that this case is "about the education of the parents' child, an aspect of legal responsibilities."  Ante, ¶ 15.  Although it accepts that a change in circumstances exists

---

[4]  The majority appears to ignore this case law, finding fault with the trial court for considering the impact that transferring schools would have on the child.  Ante, ¶ 19.  The court was required to consider what effect a move to South Burlington would have on the child both in assessing changed circumstances and in evaluating what allocation of parental rights and responsibilities was in his best interests.

23

that requires the abandonment of shared custody, it disregards all the findings about mother's behavior that contributed to the demise of cooperation and sends the matter back to the trial court to assess whether there were changed circumstances that would support a modification of the parental responsibility provisions concerning physical responsibilities. For support, the majority relies on cases that involved modification of sole custody orders: Hawkes, Kilduff and a decision that is of little relevance to this case, Gates, 168 Vt. at 68, 716 A.2d at 797. The majority fails to recognize the litany of findings reflecting an overall breakdown in these parents' ability to cooperate with respect to the routine daily care and control of their child, above and beyond their disagreement concerning the child's schooling. On the basis of these findings, which are supported by the evidence, the court found that the parties' ability to communicate, cooperate and make joint decisions has, "for all intents and purposes, evaporated," and that "the increasing level of disagreement has directly impacted the child." Moreover, the breakdown in the parties' ability to effectively cooperate described by the trial court extended to the matters central to physical rights and responsibilities—the routine daily care and control of the child. Given these findings, the trial court's decision to modify physical, as well as legal rights and responsibilities, was within its discretion.

¶ 44. Although I would affirm the trial court's decision to modify legal and physical rights and responsibilities, and to assign them solely to father, I agree with the majority that on this record, we cannot affirm the trial court's parent-child contact schedule. Before the events that triggered this change from shared custody, this child was spending 64% of his time with his mother. The trial court's modified order allocated roughly 20% of the child's time to mother— three (and occasionally) four weekend visits per month, and no mid-week visits. This is a dramatic change for a child the court found to have a particular need for "consistency and continuity." To the extent this schedule is a natural consequence of mother's relocation to South Burlington, and a desire to protect the child from disruptive mid-week commutes, it may serve the child's best

24

interests. However, mother presented the trial court with a "Plan B," indicating that if the court ordered a custodial arrangement in which the child remained in the West Rutland school district, she would continue to use the Proctor home owned by her significant other for the purpose of continuing the existing parent-child contact arrangement. The trial court's parent-child contact (PCC) order does not address this possibility, or explain why, in the face of mother's stated willingness to return to the West Rutland area to facilitate ongoing contact with the child, such a dramatic curtailment of mother's PCC time was in the child's best interests. Because the trial court did not address this consideration in determining the PCC schedule, I would remand for reconsideration of the schedule in light of this factor. I join the majority's decision to that extent.

¶ 45. In reversing the court's decision as to physical rights and responsibilities, however, the majority ignores our standard of review and ignores the clear rationale advanced by the trial court in support of its decision. Where, as here, "the family court's award of custody reflects its reasoned judgment in light of the record evidence, its decision may not be disturbed." Kasper v. Kasper, 2007 VT 2, ¶ 5, 181 Vt. 562, 917 A.2d 463. Based wholly on an argument of its own making, the majority holds the trial court to an erroneous legal standard, and finds reversible error where no error exists at all. Although I concur with the majority's affirmance of the trial court's order with respect to legal rights and responsibilities, as well as its remand with respect to PCC, I dissent from its conclusion as to the modification and allocation of physical rights and responsibilities.

¶ 46. I am authorized to state that Justice Robinson joins in this concurrence and dissent.

_____
Associate Justice